CLERKS OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED

02/27/2018
JULIA C. DUDLEY, CLERK
BY: s/ F. COLEMAN
DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
### LYNCHBURG DIVISION

BRANDI JORDAN,

*Plaintiff,*

v.

STONEMOR PARTNERS L.P.,

*Defendant.*

CASE NO. 6:16-CV-00048

## MEMORANDUM OPINION

JUDGE NORMAN K. MOON

Brandi Jordan ("Jordan") accused her former employer StoneMor Partners L.P. ("StoneMor") of discriminating against her based on her race and sex. She brought race discrimination (Count I), sex discrimination (Count II), hostile work environment (Count III), and retaliation (Count IV) claims under Title VII and Section 1981.[1] The Court previously granted a motion to dismiss a state law claim (Count V), but did not address the first four counts. (Dkt. 37). StoneMor now moves for judgment on the pleadings, or in the alternative, summary judgment on all remaining counts. (Dkt. 66). Jordan moves for summary judgment on Counts I, III, and IV. (Dkt. 67). Three evidentiary motions are also before the Court. (Dkts. 65, 69, 74).

First, I grant StoneMor's motion to exclude Jordan's expert, but deny Jordan's motion to exclude StoneMor's expert. Second, I deny StoneMor's motion for judgment on the pleadings, as it is more efficient for the Court to utilize its discretion to address these claims on summary judgment. Third, I address the motions for summary judgment. At oral argument, Jordan conceded that StoneMor is entitled to summary judgment on the sex discrimination claim. I also grant StoneMor's motion for summary judgment on the race discrimination and retaliation claims because Jordan was fired for a legitimate reason, but I deny its motion for summary

---

[1] Jordan's complaint is ambiguous about whether Counts III and IV arise under Title VII, Section 1981, or both. However, StoneMor conceded at oral argument that each count is pled under both statutes.

judgment on the hostile work environment claim because of remaining disputes of material facts. Likewise, I deny Jordan's cross-motion for summary judgment on the hostile work environment claim because of the same disputes of material facts. Finally, I limit the categories of damages that will be available to Jordan, but do not grant StoneMor's motion for summary judgment on damages in whole.

## I. MOTION FOR JUDGMENT ON THE PLEADINGS

StoneMor first moves for judgment on the pleadings. (Dkt. 66-1).[2] When, as here, the parties have also put forward evidence from the record, "it is within the district court's discretion whether to accept extra-pleading matter on a motion for judgment on the pleadings and treat it as one for summary judgment or to reject it and maintain the character of the motion as one under Rule 12(c)." *McBurney v. Cuccinelli*, 616 F.3d 393, 410 (4th Cir. 2010) (Agee, J. concurring in part and dissenting in part) (quoting 5C Wright & Miller, Federal Practice and Procedure § 1371 (3d ed. 2010)); *Covey v. Assessor of Ohio Cty.*, 777 F.3d 186, 193 n.7 (4th Cir. 2015). Here, I will consider StoneMor's arguments for judgment on the pleadings as part of its motion for summary judgment because, if I granted the motion for judgment on the pleadings, I would likely to have to look at the evidence to decide whether to allow Jordan leave to amend.

## II. MOTIONS TO EXCLUDE EXPERT TESTIMONY

There are cross-motions to exclude the parties' respective experts. Because this testimony determines whether there is a genuine dispute regarding certain categories of damages, I address it before the motions for summary judgment. *See Ruffin v. Shaw Indus., Inc.*, 149 F.3d 294, 296 (4th Cir. 1998). I will grant StoneMor's motion to exclude Jordan's expert testimony,

---

[2]     Jordan does not respond to any of StoneMor's Rule 12(c) arguments. (*See* dkt. 76 at ECF 12-13). She mistakenly believes that this motion is untimely because the Court previously ruled on a motion to dismiss and because discovery has now concluded. (*Id.*). However, as Fed. R. Civ. P. 12(c) states, "a party may move for judgment on the pleadings" as long as they do so "early enough not to delay trial . . . ."

(dkt. 65), because Jordan did not disclose her expert until 377 days after the Court's deadline and because discovery was then closed. I will deny Jordan's motion to exclude StoneMor's expert because StoneMor's expert is adequately qualified and was disclosed in a timely manner.

## A. StoneMor's Motion to Exclude Jordan's Expert Testimony

After discovery had closed and the deadline for dispositive motions and motions to exclude approached, StoneMor filed a motion to exclude all of Jordan's expert testimony. (Dkt. 65). The basis for this motion was simple: Jordan had yet to disclose any expert testimony in accordance with Fed. R. Civ. P. 26(a)(2) and the pretrial order. (Dkt. 31). Jordan never directly responded to this motion; instead she filed a "Disclosure of treating physicians and clinicians expected to testify" five days later, on December 26, 2017. (Dkt. 70).[3] Jordan's disclosure identified at least one doctor (Kristi Kidd) as a purported expert, and mentions in passing one other individual and an entity (Teresa Warner and Central Virginia Family Physicians, respectively). (Dkt. 70). It is not clear whether Jordan was also disclosing them as potential witnesses. Generally, the expert's testimony relates to Jordan's miscarriage that was allegedly caused by the harassment. (*Id.*). StoneMor then moved to strike this disclosure as tardy and irrelevant. (Dkt. 74). Then, for the first time at the hearing on these motions, Jordan argued that she was offering the doctor only as a fact witness (even though her belated disclosure of the treating doctor was as an expert under ¶ 19 of the pretrial order, (dkt. 11)).

In any event, Jordan's belated disclosure of her treating physician as a witness requires that the doctor's testimony be excluded. As relevant here, the pretrial order states:

> With respect to expert witnesses who are not retained or specially employed to provide expert testimony or whose duties as an employee of the party do not regularly involve giving expert testimony, *such as a treating physician or*

---

[3]     I construe this disclosure, and her opposition to StoneMor's motion to strike this disclosure, (dkt. 80), as her response to StoneMor's motion to exclude.

*clinician*, the plaintiff must disclose the identity of any such witness and provide a summary of all opinions the witness will render and the basis therefore not later than 75 days from the date of this order, and the defendant must disclose the identity of any such witness and provide a summary of all opinions the witness will render and the basis therefore not later than 90 days from the date of this order.

(Dkt. 11, ¶19) (emphasis added). The pretrial order required Jordan to make particular disclosures about her treating physician if she wishes her to testify. And even if it did not, "a party seeking to introduce treating physician testimony should generally comply with Rule 26(a)(2)(C)." *Kristensen ex rel. Kristensen v. Spotnitz*, Case No. 3:09-cv-00084, 2011 WL 5320686, at *1 (W.D. Va. June 3, 2011). Jordan's disclosure was late even under this more generous background rule. The pretrial order was issued on September 30, 2016. (Dkt. 11). Jordan was required to disclose any treating physician that she expected to testify and provide a summary of the expert's opinions by December 14, 2016. Jordan did not disclose her treating physician until over a year later, on December 26, 2017. This disclosure was after the close of discovery, and so StoneMor was unable to depose the treating physician.

Fed. R. Civ. P. 37(c)(1) anticipates this sort of tardiness; it provides that "[i]f a party fails to provide information or identify a witness[,] . . . the party is not allowed to use that information or witness to supply evidence[,] . . . unless the failure was substantially justified or is harmless." *See also Wilkins v. Montgomery*, 751 F.3d 214, 220, 223 (4th Cir. 2014). Rule 37(c)(1) continues by giving courts the authority to order lesser penalties (*e.g.* forcing the party to pay fees caused by the delay). The Fourth Circuit has provided five factors for district courts to consider when exercising this discretion: "(1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence." *Russell v. Absolute*

*Collection Servs., Inc.*, 763 F.3d 385 (4th Cir. 2014). "The burden of establishing these factors lies with the nondisclosing party." *Wilkins*, 751 F.3d at 222.

Taken together, these factors demonstrate that the testimony of the treating physician must be excluded. Jordan does not even attempt to carry her burden under these factors because she wrongly assigns that burden to StoneMor. (Dkt. 80 at ECF 2-3). This alone provides reason to rule against her. Still, I consider the factors, and find that they cut strongly against Jordan's position. StoneMor's surprise and ability to cure are both directly related to the fact that discovery has already closed, and so StoneMor cannot depose Jordan's experts. To the extent the Court allowed StoneMor to depose the physician, it would delay trial, implicating the third factor. Admittedly, this evidence is important—without it Jordan will not be able to causally connect her miscarriage to her work-related stress. Still, Jordan has provided no explanation for her failure to disclose the evidence. Considering these factors together, and the fact that Jordan did not attempt to carry her burden under them, I will exclude Jordan's expert testimony.

**B. Jordan's Motion to Exclude StoneMor's Expert Testimony**

After StoneMor moved to exclude Jordan's expert testimony, Jordan belatedly responded by moving to exclude StoneMor's expert testimony. (Dkt. 69).[4] StoneMor's expert would testify about whether Jordan's miscarriage was caused by stress. (Dkt. 69-1). Jordan argues (1) StoneMor's disclosure of the expert was untimely and (2) the expert is unqualified. (Dkt. 69). Jordan's argument that StoneMor's expert disclosure was untimely fails because the Court granted StoneMor's request for an extension of time to file its expert disclosure. (Dkt. 43).

Jordan's second argument is that StoneMor's expert is not qualified to testify about miscarriages under Fed. R. Evid. 702 and *Daubert*. (Dkt. 69 at ECF 2-3). An expert qualified

---

[4] Because the motion fails on its merits, I do not consider whether to deny Jordan's motion to strike as untimely.

"by knowledge, skill, experience, training, or education, may testify" as to scientific, technical, or other specialized knowledge if it will assist the trier of fact. Fed. R. Evid. 702. Such testimony is only admissible if (1) "the testimony is based upon sufficient facts or data," (2) "the testimony is the product of reliable principles and methods," and (3) "the expert has reliably applied the principles and methods to the facts of the case." *Id.* "[A] court may consider whether the expert witness theory or technique: (1) can be or has been tested; (2) has been subjected to peer review and publication; (3) has a high known or potential rate of error; and (4) is generally accepted within a relevant scientific community." *Bresler v. Wilmington Tr. Co.*, 855 F.3d 178, 195 (4th Cir. 2017) (citation and internal quotation marks omitted); *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 593–94 (1993). This list of factors is not exhaustive. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999).

Jordan never took the expert's deposition, and so her attacks on the expert's knowledge about miscarriages all grow out of the expert's resume. (Dkt. 75 at ECF 4). This resume, however, demonstrates that the expert is eminently qualified to testify about miscarriages. The expert has spent his career practicing in gynecology and has had six academic appointments at Brown University, the National Institute of Health, and George Washington University Medical School. (Dkt. 75 at ECF 5). While much of this experience is broader than the specific question concerning miscarriages, the expert's education and experience help him clear the *Daubert* threshold. *See Nease v. Ford Motor Co.*, 848 F.3d 219, 229 (4th Cir. 2017). I will deny Jordan's motion to exclude StoneMor's expert. Furthermore, because I will exclude Jordan's expert, StoneMor will be entitled to summary judgment on damages related to the miscarriage, as described below, and will likely not seek to admit its expert's testimony in any event.

### III. Cross-Motions for Summary Judgment

StoneMor moves for summary judgment on all claims, and Jordan moves for summary judgment on all claims but the sex discrimination claim.[5] I will grant StoneMor's motion on all claims except Jordan's claim for a hostile work environment. I will also deny Jordan' motion for summary judgment on that claim. The other claims fail because StoneMor fired Jordan for a legitimate reason.

### A. Legal Standard

Federal Rule of Civil Procedure 56(a) provides that a court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact." "As to materiality . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The dispute about a material fact must be "genuine." *Id.* A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for

---

[5] The parties spend considerable time arguing about whether Jordan's motion for summary judgment was filed on time. (*See* dkts. 78, 79, 84, 87, 89, 94). Because I deny Jordan's motion on its merits in any event, I do not address this dispute.

StoneMor also asks the Court to consider it motion for summary judgment unopposed because Jordan's opposition was untimely. (Dkt. 83 at ECF 16). At the hearing and in her reply briefing, Jordan's attorney expressed her continuing belief that she had filed her brief on time. (Dkt. 84 at ECF 1-2). Jordan's attorney is wrong; she was required to file her brief in opposition "within 14 days of the date of service of the movant's brief," (dkt. 11 at 2-3), or by Friday, January 5, 2018. She did not file her brief until Monday, January 8, 2018. (Dkt. 76).

In determining if a party's neglect is excusable, courts consider "the danger of prejudice to the [opposing party], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993). Because of the Fourth Circuit's preference for resolving cases on the merits, my finding that only minimal prejudice could have arisen from the one-business-day delay, and the lack of any bad faith on Jordan's part, I will consider her brief in opposition. *See Turner v. United States*, 736 F.3d 274, 283 (4th Cir. 2013); *Nelson v. Star Enter.*, 220 F.3d 587 (5th Cir. 2000) ("District courts have broad discretion to consider untimely oppositions to motions for summary judgment.") (unpublished).

the nonmoving party." *Id.* But in order to for a jury to rely on the evidence, and therefore for the evidence to preclude summary judgment, the evidence of the disputed fact must be admissible. *Guessous v. Fairview Prop. Investments, LLC*, 828 F.3d 208, 216 (4th Cir. 2016). A court must view the record as a whole and draw all reasonable inferences in the light most favorable to the nonmoving party. *See, e.g.*, *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986). When, as here, there are cross-motions for summary judgment, a court must "consider each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law." *Defs. of Wildlife v. N. Carolina Dep't of Transp.*, 762 F.3d 374, 392 (4th Cir. 2014). So when evaluating StoneMor's motion for summary judgment, I will view all facts in the light most favorable to Jordan; when evaluating Jordan's motion for summary judgment, I will view all facts in the light most favorable to StoneMor. *Defs. Of Wildlife v. N. Carolina Dep't of Transp.*, 762 F.3d 374, 392 (4th Cir. 2014). Finally, "[t]he responsibility to comb through the record in search of facts relevant to summary judgment falls on the parties—not the court." *Carlson v. Boston Sci. Corp.*, 856 F.3d 320, 325 (4th Cir. 2017).

## B. Evidentiary disputes

In ruling on the motions for summary judgment, I may only consider evidence that would be admissible at a trial. *Guessous*, 828 F.3d at 216. StoneMor argues that some of the evidence cited is inadmissible. Most of its arguments fail, but I work through them before recounting the admissible evidence in the light most favorable to Jordan.

First, StoneMor claims that Jordan should not be able to rely on facts supported by exhibits that were not uploaded correctly with Jordan's motion for summary judgment. (Dkt. 78 at ECF 6). Jordan later produced some of the corrected exhibits in her reply briefing; these exhibits included her complete deposition, (dkt. 84-3), various incidents and reports related to

Anita Deeb, (dkt. 84-1), and various letters that StoneMor sent to Jordan, (dkt. 84-2). "[W]here new evidence is presented in a reply to a motion for summary judgment, the district court should not consider the new evidence without giving the non-movant an opportunity to respond." *S.E.C. v. Platforms Wireless Int'l Corp.*, 617 F.3d 1072, 1087 n.9 (9th Cir. 2010) (citation omitted). However, StoneMor relied upon Jordan's deposition throughout these motions; it had access to the pages Jordan cited in her motion. There is no reason for the Court to blind itself to those parts of the deposition that Jordan cited, but did not provide. Likewise, I will consider the citations to the various incident reports and letters that StoneMor sent to Jordan, to the extent they are otherwise admissible. StoneMor produced these documents to Jordan and was certainly aware of their content.[6]

Second, StoneMor argues that certain emails and letters from a former StoneMor employee are inadmissible hearsay. (Dkt. 78 at ECF 7). These letters support Jordan's testimony and provide more details about the problematic work environment her supervisor created. Jordan argues that these letters were kept as StoneMor's business records. (Dkt. 84 at ECF 3-4). "For a record to be admitted as a business record, it must be (1) made by a regularly conducted business activity, (2) kept in the 'regular course' of that business, (3) the regular practice of that business to make the memorandum, (4) and made by a person with knowledge or

---

[6]    I also note that StoneMor's characterization of various parts of the record is clearly contradicted by portions of this evidence that it possessed (and produced). For example, both at the hearing and in its briefs StoneMor represented that it was undisputed that Anita Deeb had only used the n-word three times and had only directed the epithet at her male lovers. (Dkt. 66-1 at ECF 46). However, Jordan's deposition, which StoneMor cites for its characterization of the facts, clearly provides other examples of Deeb's use of this word. (*See, e.g.,* dkt. 84-3 at ECF 109-117). I remind counsel that "[b]y presenting to the court a . . . written motion . . . an attorney . . . certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information." Fed. R. Civ. P. 11(b).

from information transmitted by a person with knowledge." *United States v. Cone*, 714 F.3d 197, 219 (4th Cir. 2013) (internal citations and quotation marks omitted). "While properly authenticated e-mails may be admitted into evidence under the business records exception, it would be insufficient to survive a hearsay challenge simply to say that since a business keeps and receives e-mails, then ergo all those e-mails are business records falling within the ambit of Rule 803(6)(B)." *Id.* at 220. Here, the emails and letters do not fall under the business record exception because they were not generated by StoneMor and they were not part of a regularly conducted activity or kept in the regular course of business. *See* Fed. R. Evid. 803(6)(B)). Nonetheless, the letters are admissible for the limited purpose of displaying StoneMor's knowledge of employee complaints about Deeb's behavior. *See* Fed. R. Evid. 801(c)(2). This is particularly relevant to the claims for punitive damage that are based on StoneMor's knowledge of Deeb's behavior and failure to respond.

Third and finally, StoneMor argues that the Court should not consider two affidavits filed by Jordan's former co-workers. (Dkt. 78 at ECF 8-11). While these two co-workers were disclosed as potential witnesses, Jordan never provided StoneMor their addresses or phone numbers as required by Fed. R. Civ. P. 26(a). StoneMor asks that the Court refuse to consider the affidavits because Jordan never supplemented her disclosures, as she was required to under Fed. R. Civ. P. 26(e). StoneMor alternatively argues that the affidavits are irrelevant.

Very little in these affidavits has any relevance. Ryan Hunter's affidavit, (dkt. 68-3), does not mention Jordan at all or whether she was a witness to or aware of any of the conduct he experienced. At this stage, his testimony is relevant only to the extent that it establishes

StoneMor's knowledge of Deeb's conduct, but not otherwise.[7] Similarly, Terrell Miller's affidavit, (dkt. 68-2), mentions Jordan only twice: it notes that Deeb used the n-word in Jordan's presence and that he was aware Jordan complained to StoneMor about this. (*Id.* at ECF 2). These two facts are relevant, but they merely corroborate Jordan's deposition. But to the extent that these affidavits testify to interactions with Deeb that are not connected to Jordan (*e.g.* Deeb revealing herself to Hunter and other men), I do not consider these irrelevant portions. When limited to the relevant portions, the admission of these affidavits is harmless at this stage because the affidavits merely reiterate Jordan's deposition testimony. Accordingly, while I will not exclude them, I also will only consider them to the extent they are connected to Jordan or demonstrate StoneMor's knowledge of Deeb's conduct.

## C. Facts[8]

StoneMor is a company that owns cemeteries and funeral homes. (Dkt. 68-14 at ECF 4). Jordan, a heterosexual African-American female, was employed by StoneMor from early 2011 until January 26, 2015. (Dkt. 66-2 at ECF 12-13, 64, 104; dkt. 66-3 at ECF 1). She initially worked as a family services counselor at cemetery called Fort Hill Memorial Park. (Dkt. 66-3 at ECF 1). In this role, Jordan sold cemetery plots and services to customers. In order to do so, she obtained a Virginia Cemetery Sales License. (Dkt. 66-3). However, discovery revealed that she did not disclose a misdemeanor conviction in her application for this license. (*Id.*). Otherwise, Jordan appears to have been a good employee: StoneMor sent her congratulatory letters for her sales success and she frequently received performance-based bonuses. (Dkt. 84-2). By the end

---

[7] His testimony does corroborate portions of Jordan's deposition, but courts do not make credibility determinations when considering motions for summary judgment.

[8] Here, I recite the facts in the consideration of StoneMor's motion for summary judgment, and so I draw all reasonable inferences in Jordan's favor. *Celotex*, 477 U.S. at 322–24.

of her time at StoneMor, she had become an assistant manager of the Fort Hill cemetery and was earning $130,000 a year. (Dkt. 66-2 at ECF 114).

Anita Deeb, a white female, worked as StoneMor's area manager at the Fort Hill Memorial Park. (Dkt. 66-2 at ECF 52). In this role, she was Jordan's supervisor. Deeb's conduct provides the basis for Jordan's discrimination claims. Deeb frequently used the n-word at work, and occasionally directed this language at Jordan. (Dkt. 84-3 at ECF 109-116, 337).[9] Deeb also told employees at Fort Hill that African-American customers could not be buried in certain parts of the cemetery because these parts of the cemetery were reserved for white customers. (*Id.* at ECF 187). Deeb referred to this part of the cemetery as "Section Eight," an allusion to the subsidized housing complexes. (*Id.*). Deeb then refused to give sales leads to Jordan because Jordan would attempt to sell plots to African-Americans that were not in the segregated portion of the cemetery. (Dkt. 84-3 at ECF 194).

Deeb also had many sexual conversations with her employees. She told her employees she had an interest in young African-American men as sexual partners, and then referred to these men as her "house niggers." (Dkt. 66-2 at ECF 42-44; dkt. 68-12 at ECF 2). Relatedly, she made sexual advances to multiple of her male African-American employees. (Dkt. 66-2 at ECF 46-47). When one employee declined her advances, ostensibly because he is a homosexual, Deeb responded angrily and referred to the employee as a "faggot." (Dkt. 66-2 at ECF 46-47).

Deeb also engaged in other unprofessional conduct that Jordan claims related to her (Jordan's) sex. Deeb called Jordan a "bitch." (Dkt. 84-3 at ECF 337). Deeb took an AIDS test at the office, and then proceeded to discuss it with Jordan. (Dkt. 66-2 at ECF 57-58). In late 2014, Jordan had a miscarriage when she was two-months pregnant. (Dkt. 84-3 at ECF 281-83).

---

[9]     To be clear, Jordan testified that Deeb used the word "nigger." I abbreviate the epithet as "n-word" in this opinion.

When Jordan returned to work, Deeb was unsympathetic and would not allow Jordan to have the day off of work. (*Id.* at ECF 316). Finally, in addition to refusing Jordan sales leads because she was not segregating the cemetery, Deeb also refused to give Jordan sales leads because Jordan was not following Deeb's instructions to wear more revealing clothing. (Dkt. 68-11 at ECF 19; dkt. 84-3 at ECF 256).

However, Deeb's behavior eventually began to catch up with her. An employee reported Deeb in 2013 for violating the company's dress code and speaking disrespectfully towards employees. (Dkt. 68-4 at ECF 3-4; dkt. 68-14 at ECF 5). Jordan orally complained about Deeb in August 2013, although the substance of that complaint is unclear. (Dkt. 84-3 at ECF 220). When Jordan's complaint was investigated, she told human resources that she had not heard any employee raise a concern about discriminatory behavior in the work place. (Dkt. 84-3 at ECF 217). Early in 2014, a male employee reported Deeb for making personal calls to him late at night, and then asking him out for a drink. (Dkt. 84-1 at ECF 4). Jordan reported Deeb again for inappropriate behavior in early 2014. (Dkt. 68-11 at ECF 14). Then in August 2014, Jordan reported Deeb to human resources for her inappropriate sexual and racial comments, and Deeb was issued a written warning on September 12, 2014. (Dkt. 66-2 at ECF 142; dkt. 84-1 at ECF 6). Deeb was then moved away from Fort Hill Memorial Park and to another cemetery. (Dkt. 66-2 at ECF 37-38). However, Deeb was still the area manager and Jordan continued to interact with her "almost every single day." (Dkt. 68-11 at ECF 4; dkt. 84-3 at 170). Deeb's behavior did not change. (Dkt. 68-11 at ECF 4).

Jordan was terminated in January 2015. A StoneMor fraud investigation concluded that $2,070 was missing, and that Jordan was the last person responsible for it. (Dkt. 66-3 at ECF 1, 7). StoneMor then discovered that Jordan had used white out to make unauthorized changes to

other contracts.  (Dkt. 66-4).  The missing funds were discovered during a larger investigation of another Fort Hill employee, Ruettecci Hicks.  (Dkt. 66-3 at ECF 7).  This investigation began in early January 2015, the same month Jordan was fired.  (Dkt. 68-5 at ECF 1).  Human resources finished its investigation and informed Paula Harris, StoneMor's regional vice president, about the results of the fraud investigation.  (Dkt. 66-4 at ECF 1-2).  Harris then terminated Jordan's employment, based on human resources' recommendation.  (*Id.* at ECF 4; dkt. 68-14 at ECF 19).  Deeb did not participate in the fraud investigation or the decision to terminate Jordan.  (Dkt. 66-4 at ECF 1-2).

Jordan began applying for new jobs two weeks after she was fired.  (Dkt. 66-2 at ECF 90).  She applied online and at various locations.  (*Id.* at ECF 91).  At the end of February, she found a job at Sprint where she made $40,000 a year as a store manager.  (*Id.*).  She stopped looking for other jobs at that point.  (*Id.* at ECF 92).  She left Sprint in August 2017 when she moved to Las Vegas.  (*Id.* at ECF 93).

After Jordan had been terminated, Deeb received a final written warning on June 11, 2015 for her continuing inappropriate behavior.  (Dkt. 68-6 at ECF 3).  Deeb was ultimately fired on February 16, 2016.  (Dkt. 68-at ECF 3-4).  Her termination was additionally based on the poor financial performance of the cemeteries under her leadership.  (*Id.*).

## D.  StoneMor's Affirmative Defenses

### *1. Statute of Limitations Argument*

StoneMor raises two defenses that reach across Jordan's claims; I address the first of them here.  Because Jordan's claims arose in Virginia, Jordan was required to file a charge with the EEOC "within three hundred days after the alleged unlawful employment practice occurred." 42 U.S.C.A. § 2000e-5(e)(1); *Edelman v. Lynchburg Coll.*, 300 F.3d 400, 404 (4th Cir. 2002).

Jordan filed her EEOC charge on September 17, 2015. Only Title VII violations that occurred within the 300 preceding days are timely, and so no discrete acts before November 21, 2014 can give rise to Title VII liability. The hostile work environment claim would be timely as long as "an act contributing to the claim occurs within the filing period." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002). StoneMor argues that the only allegedly discriminatory act that occurred after this date was Jordan's January 26, 2015 termination, and that no other actions can give rise to Title VII liability. (Dkt. 66-1 at ECF 33).

StoneMor's argument fails for two reasons. First, StoneMor (repeatedly) mischaracterizes the record. StoneMor states no more problems occurred after Deeb was moved in response to after Jordan's August 2014 report to human resources. But Deeb was still Jordan's area manager after she was moved to another location, and Jordan had to interact with her frequently. And in her deposition, Jordan states that Deeb continued using the n-word, discussing her sexual behavior, and denying customer leads to the employees that would not engage in discriminatory practices. These facts, alongside Jordan's eventual termination, serve as timely bases for her claims. StoneMor tries to circumvent this by pointing out that Jordan was unable to cite the specific dates for this conduct. But Jordan's testimony was unequivocal that the conduct continued throughout her employment, even if she did not have specific dates. Her claims are not time-barred under Title VII.

Second, StoneMor's argument additionally fails because Count I, III, and IV also arise under Section 1981. The complaint itself is not clear whether Counts III and IV are pled under both Title VII and Section 1981, or only one of those statutes. But, as stated in the above note, the parties have treated the claims as arising under both statutes in their argumentation and briefing, and so I also treat the claims as pled under both statutes. Even if these claims were

time-barred under Title VII, the claims would still all be timely under Section 1981's four year statute of limitations. *Guessous v. Fairview Prop. Investments, LLC*, 828 F.3d 208, 223 (4th Cir. 2016) ("Hostile work environment claims under § 1981 are subject to a four year limitation period."); 28 U.S.C. § 1658. Accordingly, I reject StoneMor's statute of limitations argument.

### 2. *EEOC Charge Limitation Argument*

StoneMor's second affirmative defense also fails. StoneMor argues that it can only be liable for those claims Jordan administratively exhausted. StoneMor's understanding of the law is basically right; its application is not. The controlling case here is *Balas v. Huntington Ingalls Indus., Inc.*, 711 F.3d 401 (4th Cir. 2013). "[F]ederal courts lack subject matter jurisdiction over Title VII claims for which a plaintiff has failed to exhaust administrative remedies." *Id.* at 406. Put differently, "[a]n employee seeking redress for discrimination cannot file suit until she has exhausted the administrative process." *Id.* And exhausting the administrative process does not give a plaintiff free rein to sue an employer for any and all discrimination: "In any subsequent lawsuit alleging unlawful employment practices under Title VII, a federal court may only consider those allegations included in the EEOC charge." *Id.* at 407. The "allegations included in the EEOC charge" include "any charges that would naturally have arisen from an investigation" of the discrimination in the EEOC charge. *Id.* at 407-08 (quoting *Dennis v. Cnty. of Fairfax*, 55 F.3d 151, 156 (4th Cir. 1995)).

I note again that these claims arise under both Section 1981 and Title VII. Section 1981 has no analogous exhaustion requirement, and so any failure to exhaust under Title VII would still allow these claims to proceed under Section 1981. *See, e.g., Johnson v. Ry. Exp. Agency, Inc.*, 421 U.S. 454, 460 (1975) ("[T]he filing of a Title VII charge and resort to Title VII's administrative machinery are not prerequisites for the institution of a Section 1981 action.").

However, because different remedies are potentially implicated by the different statutes, I still address whether the claims may proceed under Title VII.

Jordan exhausted her Title VII claims. In the EEOC charge, Jordan claimed she was discriminated against on the basis of her race and sex. (Dkt. 66-2 at ECF 113-14). She also claimed that she had suffered from a hostile work environment and had been retaliated against. (*Id.*). She said these were continuing actions. (*Id.*). The sheet she attached to the charge contains much of the information included in the complaint: it mentions Deeb's continuous discussion of her sex life, her use of the n-word, the homophobic comment made to a coworker, her AIDS test taken in the office, her requiring employees to sell African-Americans plots in a certain section of the cemetery, and the various injuries incurred by Jordan. (*Id.* at 114-18). Courts construe these administrative charges liberally. *Chacko v. Patuxent Inst.*, 429 F.3d 505, 509 (4th Cir. 2005).

I find that this charge is largely co-extensive with the discrimination alleged and the evidence produced by Jordan. While discovery has provided more detailed support for some of these allegations (*i.e.* that Deeb used the n-word more pervasively than alleged in the complaint), the same underlying claims remain. These are "charges that would naturally have arisen from an investigation" of the content that was provided in the EEOC charge, and so the EEOC charge does nothing to limit these theories. *Balas*, 711 F.3d at 407; *see also Hentosh v. Old Dominion Univ.*, 767 F.3d 413, 417–18 (4th Cir. 2014).

## E. Race Discrimination under Title VII and Sec. 1981 (Count I)

StoneMor moved for summary judgment on Jordan's discrete claims of race discrimination. It is important to note that the discrimination claim focuses on one adverse

employment action: Jordan's 2015 termination.[10]  StoneMor argues that (1) its decision to fire Jordan was not based on race and (2) Jordan cannot demonstrate that its proffered reason for firing her (the missing $2,070) was pretextual.  Jordan responds by arguing that (1) the decision to fire her must have been pretextual because she did not actually take the money and (2) Deeb is an appropriate comparator who was treated differently because of her race.  Because Jordan fails to make out her *prima facie* case and there is not a genuine dispute that StoneMor believed Jordan took the money, I grant its motion for summary judgment.

Jordan can make out her case either (1) by providing "direct or circumstantial evidence that [her] race was a motivating factor in [StoneMor's] adverse employment action" or (2) by working through the *McDonnell Douglas* burden shifting framework.  *Holland v. Wash. Homes, Inc.*, 487 F.3d 208, 213 (4th Cir. 2007); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05 (1973).  Direct evidence must be "evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision."  *Taylor v. Virginia Union Univ.*, 193 F.3d 219, 232 (4th Cir. 1999) (en banc) (citation and internal quotation marks omitted).  Circumstantial evidence must demonstrate that the discriminatory attitude was "linked" to or "a motivating factor" in the adverse employment action.  *Warch v. Ohio Cas. Ins. Co.*, 435 F.3d 510, 520 (4th Cir. 2006).  Jordan admitted in her deposition that she did not know whether her termination had anything to do with

---

[10]    While other "tangible employment actions" or "adverse actions" other than termination could also give rise to a discrete discrimination claim, Jordan alleges no such other "adverse action."  *See Hoyle v. Freightliner, LLC*, 650 F.3d 321, 337 (4th Cir. 2011) (defining adverse employment action).  Jordan's brief does point to a new adverse employment action: Deeb's denial of sales leads to Jordan.  But, as discussed more fully below, Jordan never amended her complaint to include this theory and cannot switch horses midstream.  *See U.S. ex rel. Owens v. First Kuwaiti Gen. Trading & Contracting Co.*, 612 F.3d 724, 731 (4th Cir. 2010) ("[I]t is well established that a plaintiff may not raise new claims after discovery has begun without amending his complaint.").

her race. (Dkt. 66-2 at ECF 88). Because there are no allegations of direct or circumstantial evidence, both parties focus on whether Jordan can prove facts that would make out a *prima facie* case under *McDonnell Douglas*.

To make out a *prima facie* of race discrimination under *McDonnell Douglas*, Jordan must show that "(1) she is a member of a protected class; (2) she suffered adverse employment action; (3) she was performing her job duties at a level that met her employer's legitimate expectations at the time of the adverse employment action; and (4) the position remained open or was filled by similarly qualified applicants outside the protected class." *Bonds v. Leavitt*, 629 F.3d 369, 386 (4th Cir. 2011) (quoting *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 285 (4th Cir. 2004) (en banc)). "If a plaintiff meets that burden, the burden then shifts to the employer 'to articulate a legitimate, nondiscriminatory reason for the adverse employment action.'" *Id.* (quoting *Hill*). "If the employer does so, the plaintiff must then show that 'the employer's stated reasons were not its true reasons, but were a pretext for discrimination.'" *Id.* (quoting *Hill*).

Jordan is a member of the protected class: she is an African-American. The only adverse action at issue under this claim is Jordan's 2015 termination. StoneMor sent Jordan various letters that demonstrate she was meeting StoneMor's expectations up until the time of the investigation into the $2,070. However, Jordan has not put forward any evidence about whether her position remained open or was filled.

Jordan instead tries to make out this fourth element by comparing her firing with StoneMor's treatment of Deeb. Although never stated as such by her, this appears to be a pivot from the "wrongful termination" theory she started with towards a "disparate enforcement of

disciplinary rules" theory.[11]  This approach makes some sense, and the argument she makes still is focused on whether she received different treatment than similarly situated employees outside her protected class.  In any event, Jordan's problem is that she cannot make out this fourth element of the prima facie case, however framed, because "[t]he similarity between comparators and the seriousness of their respective offenses must be clearly established in order to be meaningful."  *Lightner v. City of Wilmington*, 545 F.3d 260, 265 (4th Cir. 2008).  Here, Deeb made racially and sexually inappropriate comments.  Jordan was terminated because StoneMor believed she was responsible for the missing $2,070.  Deeb was an area manager.  Jordan's highest position at StoneMor was assistant manager, a position that required her to still report to Deeb.  Deeb's conduct and role in the company were not sufficiently comparable to Jordan's for her to function as a comparator.  *See Moore v. City of Charlotte*, 754 F.2d 1100, 1105 (4th Cir. 1985) ("The most important variables in the disciplinary context, and the most likely sources of different but nondiscriminatory treatment, are the nature of the offenses committed and the nature of the punishments imposed.").  Jordan cannot make her *prima facie* case and her claim for discrete race discrimination fails.

Even if Jordan had made out a *prima facie* case, StoneMor would still prevail because it has articulated "a legitimate, nondiscriminatory reason for the adverse employment action."  *Bonds v. Leavitt*, 629 F.3d 369, 386 (4th Cir. 2011) (citation omitted).  Namely, the corporate human resources department recommended that StoneMor terminate Jordan because she could not account for the missing $2,070.  There is no evidence that any of the racial animus or

---

[11]      "To establish a prima facie case of racial discrimination in the enforcement of employee disciplinary measures under Title VII, the plaintiff must show: (1) that he is a member of the class protected by Title VII, (2) that the prohibited conduct in which he engaged was comparable in seriousness to misconduct of employees outside the protected class, and (3) that the disciplinary measures enforced against him were more severe than those enforced against those other employees."  *Cook v. CSX Transp. Corp.*, 988 F.2d 507, 511 (4th Cir. 1993).

conduct that characterized Deeb's behavior was in any way connected with Jordan's termination.[12]  (*See* dkt. 66-4 at 1-2 ("HR approached me with the results of a fraud investigation into Brandi Jordan which concluded that numerous payments were not submitted properly or not submitted at all, contracts with white out and unauthorized changes were processed, and multiple cash payments were missing.  HR recommended that Brandi Jordan be terminated based on the foregoing findings. . . . I concurred with and followed HR's recommendation to terminate Brandi Jordan's employment . . . .")).

Jordan argues that the investigation must have been pretextual because she did not actually take the money.  But even if she was innocent, all of the evidence demonstrates that StoneMor employees reasonably believed she was guilty.  Even if they were mistaken, there is no genuine dispute that the decision to fire Jordan was based on StoneMor's belief that Jordan had taken money and was independent of her race.  *See Tinsley v. First Union Nat'l Bank*, 155 F.3d 435, 444 (4th Cir. 1998) ("It is the perception of the decision maker which is relevant."), *overruled on other grounds by National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 105 (2002); *Bonds v. Leavitt*, 629 F.3d 369, 386 (4th Cir. 2011) ("Bonds does not seriously argue that Peterson did not believe his reasons warranted her termination.").

Accordingly, despite the extensive evidence of Deeb's racial and sexual comments outlined above, Jordan (1) has not made out a *prima facie* case that she was fired on account of her race nor (2) has she rebutted the legitimacy of StoneMor's proffered reason for firing her. StoneMor is entitled to summary judgment on Count I.

---

[12]     Jordan argues repeatedly that StoneMor should be collaterally estopped from arguing that Jordan was fired for cause because it did not contest her unemployment application.  This argument fails.  StoneMor had significantly different incentives to dispute Jordan's claims in the unemployment proceeding than in this suit.  *See, e.g., Smith v. G.M.G. Partners, L.L.C.*, No. 01-C-1144, 2002 WL 31749184, at *2 (N.D. Ill. Dec. 3, 2002) (noting "the stakes in such a proceeding are dramatically different from those in a Title VII lawsuit such as this one").

**F. Hostile Work Environment under Title VII and Sec. 1981 (Count III)**

*1. StoneMor's Motion for Summary Judgment*

I deny StoneMor's motion for summary judgment on Jordan's hostile work environment claim because Deeb's continuing comments about African-Americans and Jordan's sex were sufficient to create a hostile work environment.

The elements of a hostile work environment claim "are the same under either § 1981 or Title VII." *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 184 (4th Cir. 2001). "To prevail on a hostile work environment claim, 'a plaintiff must show that there is (1) unwelcome conduct; (2) that is based on the plaintiff's [protected characteristic]; (3) which is sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment; and (4) which is imputable to the employer.'" *Guessous v. Fairview Prop. Investments, LLC*, 828 F.3d 208, 221 (4th Cir. 2016) (citations omitted and alteration in the original). The conduct must be both subjectively and objectively hostile. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). Because Deeb was Jordan's supervisor, her conduct that created a hostile work environment is generally imputable to StoneMor. *Mosby-Grant v. City of Hagerstown*, 630 F.3d 326, 337 (4th Cir. 2010).

I start with the hostile work environment theory based on race discrimination. The parties do not dispute that Deeb's comments and conduct were unwelcome and based on Jordan's race. StoneMor argues instead that the comments were not sufficiently severe or pervasive. But Jordan's deposition was clear that Deeb used the n-word continuously, even after StoneMor moved Deeb to another location. (Dkt. 84-3 at ECF 109-119, 167-170; *id.* at ECF 110 ("So from the time that Anita started and the time I left, she used it more than once a day.")). Jordan's deposition also is clear that Deeb did direct this language at Jordan, and frequently used

it in front of her. (*Id.* at ECF 337 ("She would call me the 'N' word.")). Even limited use of this epithet would be sufficiently severe to make out Jordan's *prima facie* case. *See, e.g., Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 280 (4th Cir. 2015); *White v. BFI Waste Services, LLC*, 375 F.3d 288, 298 (4th Cir. 2004). Jordan has sufficiently made out her *prima facie* case on her race-based hostile work environment claim.

Although a closer question, Jordan has also sufficiently proven her *prima facie* case of a sexually hostile work environment. "The critical issue, Title VII's text indicates, is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 25 (1993) (Ginsburg, J. concurring). Here, the central questions are whether Deeb's unwelcome conduct was "based on [Jordan's] sex" and the severity of that conduct. Jordan relies on the following facts: (1) Deeb called Jordan a "bitch," (2) Deeb was unsympathetic when Jordan had a miscarriage, (3) Deeb referred to one of Jordan's coworkers as a "faggot" in Jordan's presence, (4) Deeb made sexual advances to some male employees and talked about her sexual preferences at work, (6) Deeb took or shared the results of an AIDS test in front of Jordan, and (7) Deeb refused to give sales leads to Jordan because Jordan did not follow Deeb's instructions to wear revealing clothing.

Admittedly, some of this conduct was not made because of Jordan's sex. For example, Deeb's use of the epithet "faggot" towards a male co-worker was certainly inappropriate, but it was not tied to *Jordan*'s sex. Likewise, Deeb's sexual advances to her male employees and discussion of her sexual preferences for those men was harassment of those male individuals, but it was not tied to Jordan or her sex. *Compare with E.E.O.C. v. Fairbrook Med. Clinic, P.A.*, 609

F.3d 320, 329 (4th Cir. 2010) (describing general sexual comments, in addition to sexual requests and propositions, made by male superior to female inferior).

Other conduct was not sufficiently "severe" to rise to sexual harassment. While Deeb potentially should have been more sympathetic to Jordan's miscarriage, there is no sign here that this lack of sympathy approached harassment. Deeb's sharing of the AIDS test results falls in this same category. Likewise, Deeb's use of the word "bitch" towards Jordan was certainly inappropriate, but did not rise to the level of sexual harassment. While the Fourth Circuit has noted that the use of that word can be derogatory towards women, *see Mosby-Grant*, 630 F.3d at 334, it is important to note that it here was being used by one female to another female and additionally was not used alongside the other language present in *Mosby-Grant*.

Still, Jordan's deposition describes how Deeb would give sales leads to employees "based off of what we were wearing." (Dkt. 84-3 at ECF 255). Deeb told her female employees to "wear more revealing things" and to "show off [their] assets." (*Id.*). Jordan felt like she was being "told to use pretty much your boobs and your butt to make a sale to [] gentlem[e]n" customers. (*Id.* at ECF 256). Because Deeb did not follow this advice, she was not given certain sales leads. (*Id.*). The fact that Deeb was Jordan's supervisor makes this harassment more problematic. *Boyer-Liberto*, 786 F.3d at 279. By limiting the leads Jordan could receive, a reasonable jury could find that Deeb effectively altered the conditions of Jordan's employment. Furthermore, the Fourth Circuit has noted "that a hostile work environment claim can be bolstered by relying on evidence of a workplace tainted by both sex and racial discrimination." *Mosby-Grant*, 630 F.3d at 336. Here, Deeb was also refusing to give leads to Jordan because she was not limiting her black customers to the segregated part of the cemetery. The two forms of harassment overlapped. Considering the work environment as a whole, a reasonable jury could

find that Jordan was "exposed to disadvantageous terms or conditions of employment to which [men were] not exposed." *Harris*, 510 U.S. at 25. Jordan has sufficiently made out her *prima facie* case under the sex based theory of her hostile work environment claim.

Although Jordan has produced evidence to make out her *prima facie* case under both the racial and sexual harassment theories of her claim, StoneMor raises a *Faragher / Ellerth* defense to the hostile work environment claim. "[W]hen an employee suffers no tangible direct employment action, the defendant-employer may raise [this] affirmative defense by showing: '(a) that the employer exercised reasonable care to prevent and correct promptly any [racially or] sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise.'" *Mosby-Grant*, 630 F.3d at 337.

But StoneMor is not entitled to summary judgment based on this defense because there is a genuine dispute about whether StoneMor exercised "reasonable care" to prevent the harassing behavior. StoneMor relies on its nondiscrimination policy and its decision to move Deeb to another location after Jordan's August 2014 report to human resources. While "[d]istribution of an anti-harassment policy provides compelling proof that the company exercised reasonable care in preventing and promptly correcting . . . harassment," *Barrett v. Applied Radiant Energy Corp.*, 240 F.3d 262, 266 (4th Cir. 2001) (internal quotation omitted), that proof is rebutted "upon a showing that the employer adopted or administered the policy in bad faith or that the policy was otherwise defective or dysfunctional." *McKinney v. G4S Gov't Sols., Inc.*, No. 16-1498, 2017 WL 5033277, at *4 (4th Cir. Oct. 19, 2017) (unpublished). At StoneMor, employees had long complained about Deeb's behavior without any corrective action being taken—this is evidence that the policy was indeed dysfunctional. And StoneMor's decision to move Deeb to another

office fairs no better—Jordan testified that she still spoke with Deeb almost every day after this move because Deeb was still her manager. Jurors could disagree about whether these corrective actions demonstrate "reasonable care." Because of this remaining dispute of material fact concerning the *Farragher / Ellerth* defense, StoneMor cannot prevail at this stage and its motion for summary judgment will be denied.

### 2. *Jordan's cross-motion for summary judgment*

Jordan filed a cross-motion seeking affirmative summary judgment on the hostile work environment claims. The analytical framework remains the same as for StoneMor's motion. *Guessous*, 828 F.3d at 221 (setting forth elements). However, I now look at this framework while taking all reasonable inferences from the evidence in StoneMor's favor. *Defs. of Wildlife v. N. Carolina Dep't of Transp.*, 762 F.3d 374, 392 (4th Cir. 2014).

I will assume that Jordan could make out her *prima facie* case under both theories. But even so, Jordan cannot prevail on her motion for summary judgment because of StoneMor's *Faragher / Ellerth* defense. Taking the reasonable inferences in StoneMor's favor now, a jury could find that moving Deeb to another office was "reasonable care." *Mosby-Grant v. City of Hagerstown*, 630 F.3d 326, 337 (4th Cir. 2010). A reasonable jury could find that Deeb's problematic interactions with Jordan were largely cured by the move—Jordan does not provide specific examples of problematic interactions that occurred after this point, her testimony instead relies on generalizations of Deeb's conduct. Additionally, distribution of the non-discrimination policy would provide "compelling proof" of reasonable care, and a jury would not be compelled to find that StoneMor's nondiscrimination policy was "defective or dysfunctional." *McKinney*, 2017 WL 5033277, at *4. This creates another material dispute. Because reasonable juries

could disagree on whether StoneMor's response to Deeb's behavior was reasonable, it would be premature to grant summary judgment for Jordan. Jordan's motion is denied.

## G. Retaliation under Title VII and Sec. 1981 (Count IV)

StoneMor is entitled to summary judgment on the retaliation claim concerning Jordan's termination for the same reasons it is entitled to the summary judgment on the discrete discrimination claims: it had a legitimate, non-pretextual reason for terminating Jordan.[13] "In order to establish a *prima facie* case of retaliation, a plaintiff must prove three elements: (1) that she engaged in a protected activity; (2) that her employer took an adverse employment action against her; and (3) that there was a causal link between the two events." *E.E.O.C. v. Navy Fed. Credit Union*, 424 F.3d 397, 405–06 (4th Cir. 2005). The parties do not dispute, at least for purposes of this motion, (1) that Jordan engaged in a protected activity by reporting Deeb's discriminatory conduct and behavior in August 2014 and (2) that her firing constituted an adverse employment action. (Dkt. 66-1 at ECF 37). While Jordan points to other reports she made to human resources about Deeb, these reports were not protected activity because they were insufficiently tied to Jordan's race or sex. So this claim turns on the causation between the August 2014 report and the January 2015 termination.

I will assume that a reasonable jury could find Jordan has made out her *prima facie* case. However, Jordan's claim fails because, as discussed above with the claims of discrete

---

[13]   I do not consider a newly raised second retaliation theory. In her complaint, Jordan alleged that Deeb directed employees to segregate the cemetery, but never mentioned any adverse employment actions connected to the practice. However, in her deposition and summary judgment briefing, Jordan additionally stated that she was denied sales leads because she refused to guide potential African-American clients into a segregated portion of the cemetery. These statements may be considered as part of the hostile work environment claim, but they will not be considered as an alternative "adverse employment action" for the retaliation claim because they would constitute a new claim. *C.f. Supinger v. Virginia*, 259 F. Supp. 3d 419, 441 (W.D. Va. 2017). And "a plaintiff may not raise new claims after discovery has begun without amending his complaint." *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 617 (4th Cir. 2009).

discrimination, StoneMor has articulated "a legitimate, nondiscriminatory reason for the adverse employment action." *Bonds v. Leavitt*, 629 F.3d 369, 386 (4th Cir. 2011) (citation omitted). Namely, human resources recommended that StoneMor terminate Jordan because she could not account for the missing $2,070.

Jordan's primary defense is that she was innocent, that she did not take the money. But again, whether Jordan took the money or not is irrelevant because there is no genuine dispute that StoneMor terminated Jordan because it reasonably believed she had taken the money. *Bonds v. Leavitt*, 629 F.3d 369, 386 (4th Cir. 2011). Contrary to Jordan's unsupported assertions at the hearing, all of the evidence demonstrates that an independent human resources department engaged in a impartial investigation into the missing funds and other irregularities. (Dkt. 66-4 at ECF 1-2; dkt. 68-5 at ECF 10). There is no evidence that Deeb or any of Deeb's retaliatory threats had any connection with Jordan's termination. Jordan briefly recites her argument that the firing must have been pretextual because Deeb was not fired for worse conduct. But as detailed above, Deeb had a different role and was accused of different conduct; she was not an appropriate comparator. Jordan cannot demonstrate that this fraud investigation was pretextual.

This theory of retaliation, the only one alleged in the complaint, fails. I will grant StoneMor's motion for summary judgment on this count.

## H. Damages

StoneMor moves for summary judgment on damages—arguing that Jordan cannot produce any evidence demonstrating her damages. While certain categories of damages will be excluded, StoneMor is not entitled to summary judgment on this grounds.

First, StoneMor argues that it would have fired Jordan if it had the after-acquired evidence of her dishonesty in her cemetery licensing application. (Dkt. 66-3). On that

application, Jordan did not disclose a prior misdemeanor conviction for failure to return rented property. While Jordan maintains that she did not know she was guilty, the record of her conviction clearly demonstrates that she was tried and found guilty as charged. (Dkt. 76-2). StoneMor has fired others for similar conduct. (Dkt. 66-3 at ECF 5 (providing records of other employees who were terminated for dishonesty or theft)). StoneMor discovered this dishonesty on November 3, 2017, and it claims that this defense means that it cannot be liable for reinstatement or front pay. *See McKennon v. Nashville Banner Pub. Co.*, 513 U.S. 352, 361-62 (1995) ("We do conclude that here, and as a general rule in cases of this type, neither reinstatement nor front pay is an appropriate remedy. It would be both inequitable and pointless to order the reinstatement of someone the employer would have terminated, and will terminate, in any event and upon lawful grounds.") (discussing the defense in the Age Discrimination in Employment Act context). I agree, and grant summary judgment in StoneMor's favor on the issues of reinstatement and front pay. *See Russell v. Microdyne Corp.*, 65 F.3d 1229, 1238 (4th Cir. 1995) ("The *McKennon* court also made clear that its analysis applied not only to claims under the ADEA, but to those under Title VII as well.").

Second, StoneMor asks for summary judgment on compensatory damages related to Jordan's pay during her post-StoneMor employment. Jordan did not produce detailed evidence of her income or paystubs, despite discovery requests. However, she did testify to her salary at Sprint. (Dkt. 84-3 at ECF 271). This testimony creates a sufficient basis for a jury to find compensatory damages, although StoneMor will be able to maintain its failure-to-mitigate argument to the jury. Likewise, Jordan's testimony concerning her emotional distress would provide a sufficient basis for a jury to award her compensatory damages. StoneMor's motion for summary judgment on this grounds will be denied.

Third, StoneMor asks the Court to cap any damages that Jordan may be entitled to in accordance with Title VII. *See* 42 U.S.C. § 1981a(b)(3)(D). However, as Jordan correctly responds, there is no cap for damages under Section 1981, and because her claims move forward under that statute, the caps do not apply to her. *See* 42 U.S.C. § 1981a(b)(4).

Fourth, StoneMor asks the Court to deny any damages based on Jordan's miscarriage because her expert should be excluded. As described above, the Court will grant StoneMor's motion to exclude Jordan's treating physician. The only evidence on causation then is StoneMor's expert report, which states that "Ms. Jordan's pregnancy loss is most likely due to a random and spontaneous genetic abnormality of the conceptus." (Dkt. 69-1 at ECF 23). Accordingly, Jordan will not be entitled to damages related to the miscarriage because Jordan has no other evidence of causation and cannot create a genuine dispute about a material fact. *See Barnes v. Anderson*, 202 F.3d 150, 160 (2d Cir. 1999) ("[W]e conclude as did the district court that, particularly in the circumstances of the present case, a miscarriage is the sort of complex injury for which expert medical evidence of causation is required.").

Fifth, StoneMor asks the Court to prevent any punitive damages. But Title VII allows punitive damages if the employer knew it was acting in violation of federal law. 42 U.S.C. § 1981a(b)(1). Here, disputes about StoneMor's knowledge remain and I will not strike punitive damages. *Ocheltree v. Scollon Prods., Inc.*, 335 F.3d 325, 335 (4th Cir. 2003).

Accordingly, Jordan will be entitled to prove some, but not other, categories of damages to a jury. I grant StoneMor's motion only in part.

## IV. CONCLUSION

In sum, I will grant StoneMor's motion for summary judgment on the claims of discrete racial discrimination (Count I) and retaliation (Count IV). Both of these claims ultimately fail

because StoneMor has provided a legitimate, non-discriminatory reason for firing Jordan. The discrimination claim additionally fails because Jordan was unable to make out her *prima facie* case.

However, Jordan's hostile work environment claim (Count III) will survive and proceed to trial. In response, StoneMor will still be able to argue for the application of the *Farragher / Ellerth* defense. If Jordan can prevail on the merits, her potential damages will be limited: she is not entitled to front pay or damages related to the miscarriage.

An appropriate Order will issue, and the Clerk of the Court is hereby directed to send a copy of this Memorandum Opinion to Plaintiffs, Defendants, and all counsel of record.

Entered this ___27th___ day of February 2018.

NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE